IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SYSCO CORPORATION,<br><br>           *Petitioner*,<br>v.<br><br>GLAZ LLC, POSEN INVESTMENTS LP, and KENOSHA INVESTMENTS LP,<br><br>           *Respondents.* | Case No. 1:23-cv-01451<br><br>Judge:  Martha M. Pacold<br><br>Magistrate Judge:  Gabriel A. Fuentes |

## MOTION TO STAY

Respondents Glaz LLC, Posen Investments LP, and Kenosha Investments LP ("Respondents") respectfully request that the Court stay consideration of Sysco Corporation's "Motion for Reassignment and Consolidation." Sysco Corp.'s Mot. for Reassignment & Consolidation, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. Mar. 24, 2023), ECF No. 6487.[1]

Sysco's motion (brought without any prior notice or discussion between counsel) is part of an elaborate forum shopping campaign to have this court hear its challenge to a preliminary injunction granted by a New York-seated arbitral tribunal applying New York law in a debtor-creditor dispute. Thus far, that campaign has included (i) rushing to this District to file a challenge to a temporary restraining order ("TRO") (assigned to Judge Pacold) that Sysco knew was days away from being mooted to try to claim "first to file" status; (ii) purporting to amend, in violation of FRCP 15, its original petition once the tribunal replaced the TRO with a

---

[1] Respondents are filing this motion in the higher-numbered case because Respondents are not parties in the lower-numbered case of the claimed related set. Respondents are providing this motion to Judge Durkin under separate cover.

preliminary injunction to try to keep its "first to file" status; (iii) removing to the Southern District of New York a properly filed petition to confirm the arbitral award in New York Supreme Court, sitting in the seat of arbitration; (iv) seeking to transfer or stay the now-removed SDNY proceeding to this Court; (v) seeking to reassign the matter from Judge Pacold to Judge Durkin; and (vi) doing all this while being on notice of the absence of diversity jurisdiction and with, at the very least, serious questions about subject matter jurisdiction altogether. This Court should not countenance such tactics and should instead allow matters to unfold in Judge Pacold's court (where both jurisdiction and the very propriety of this case will be addressed) and in the SDNY (where remand, jurisdiction and transfer are all on the table). Indeed, that is the course contemplated by Local Rule 40.4(c), which provides that motions for reassignment "should not generally be filed until after the answer or motions in lieu of answer have been filed"; not only has that not occurred, but there is in fact no operative pleading at all in the higher-numbered action.

Sysco's campaign does not end with this procedural and jurisdictional wrangling. Sysco also has been making considerable noise, in this Court and publicly, about its dismissal of the Boies Schiller firm. Sysco's posturing is at odds with the facts, which we explain briefly infra for the Court's information.

## BACKGROUND

I. **Sysco Repeatedly Breaches the Parties' Capital Provision Agreement**

Respondents are special purpose financing vehicles managed by Burford Capital LLC, a Delaware entity with its headquarters in New York. In several transactions beginning in 2019, Respondents provided Sysco over $140 million in capital collateralized by the proceeds of Sysco's antitrust claims against major U.S. chicken, beef, pork, and turkey suppliers, including Sysco's claims filed in this multidistrict litigation. During the financial crisis caused by the

2

COVID-19 pandemic, Sysco turned to Respondents as a source of much-needed liquidity, using its antitrust claims as collateral.

In connection with Respondents' most recent capital infusion, the parties entered into the operative financing agreement – the Second Amended and Restated Capital Provision Agreement ("CPA") – on December 22, 2020.[2] Although claim assignments are routine in antitrust litigation – and many of the cases pending on this court's docket are controlled by a party other than the original direct purchaser – Respondents structured their financing contracts with Sysco so as to be passive providers of capital. The CPA sets out the parties' rights and obligations pertaining to Respondents' financing and Sysco's prosecution of the underlying antitrust claims. In particular, the CPA prohibits Respondents from "control[ling] or direct[ing] the conduct of the Claims, or . . . requir[ing] settlement thereof." CPA § 5.2(b). It further states that Sysco "shall have day-to-day and overall control over" the claims. CPA § 5.2(c). This is consistent with Respondents' customary practice of passively providing capital collateralized by the future proceeds of legal claims. Sysco also retained the ability to hire and fire counsel – Respondents' rights are limited to ensuring that substitute counsel are qualified and not more expensive than the original lawyers. *See* CPA § 5.3(e).

Because Respondents do not control Sysco's day-to-day litigation of its claims (for example, Respondents are not assignees), the CPA provides Respondents other protections to ensure that Sysco does not take steps to undermine the value of the collateral. Most importantly, the CPA mandates that Sysco "shall not dispose of, transfer, encumber or assign, nor otherwise

---

[2] Because the CPA has been filed under seal, and is subject to a pending order to show cause, Respondents do not attach it in full here. *See Sysco Corp. v. Glaz LLC et al.*, No. 1:23-cv-01451 (N.D. Ill. Mar. 8, 2023), ECF Nos. 9, 11. However, the portions quoted herein are not confidential.

create, incur, assume, or permit to exist any Adverse Claim with respect to, all or any portion of such Claim (or any interest therein) or any Proceeds thereof (or any right to such Proceeds)," without Respondents' written consent. CPA § 5.3(b)(viii). This provision prevents Sysco from assigning away the sole security for Respondents' investment.

In violation of this clear prohibition, Sysco began assigning away food antitrust claims to its customers as early as January 2021, in response to pressure from those customers. All told, Sysco assigned away billions of dollars of purchase value against chicken suppliers as well as against pork, beef, and turkey suppliers. Sysco did not seek Respondents' consent to make these assignments and continued doing so even after Respondents confronted Sysco and made clear that any assignments required their approval. Sysco admitted these breaches at the time – and later during the parties' arbitration.[3]

To settle these flagrant breaches of the CPA, the parties negotiated an Amendment to the CPA, executed on March 31, 2022. Respondents released all claims against Sysco arising from the unlawful assignments. In exchange, Sysco increased Respondents' economic stake in the proceeds of the remaining claims. Because of the magnitude of Sysco's breaches, a very substantial amount of the remaining recoveries would now go to Respondents. This economic restructuring led to a misalignment of economic incentives whereby Sysco might not be sufficiently incentivized to pursue the antitrust claims zealously. As a result, the parties agreed that Sysco would assume additional contractual obligations to safeguard the value of the claims. Specifically, Sysco agreed to "take such actions as are reasonable and appropriate to maximize the Proceeds received from each Claim." *Sysco Corp. v. Glaz LLC et al.*, 1:23-cv-01451 (N.D. Ill.), ECF No. 19-3 ¶ 196(ii). Sysco further agreed that it "shall not accept a settlement offer

---

[3] *See Sysco Corp. v. Glaz LLC et al.*, 1:23-cv-01451 (N.D. Ill.), ECF No. 19-3 ¶ 222.

without [Respondents'] prior written consent, which shall not be unreasonably withheld." *Id.* But Respondents also agreed that they would "have no right to exercise control over the independent professional judgment" of Sysco's counsel. *Id.* Sysco otherwise retained, and continues to retain, full control its litigation matters. Respondents cannot mandate settlement, nor can they unreasonably prevent settlement.

## II. The Parties Commence Arbitration Because Sysco Again Threatens to Breach the Capital Provision Agreement

Some months after receiving the release, Sysco threatened to violate Respondents' contractual rights once again, this time through low-ball settlements with several large defendants without Respondents' consent. After Sysco informed Respondents of these potential settlements, Respondents objected that these settlement amounts were far too low given the strength of the civil cases against the relevant defendants and other settlements that food antitrust plaintiffs had achieved. Respondents informed Sysco that it did not have consent to enter into the agreements and requested additional, material information about the proposed settlements. When Sysco refused to provide assurances that it would not settle these claims without Respondents' consent, Respondents commenced an arbitration proceeding in New York as required by the CPA.

Yet, on December 2, 2022, while the arbitration was still pending, Sysco disclosed a near-final settlement agreement and stated that, absent an injunction from the Tribunal, it would execute the settlement by the end of the year. Respondents promptly moved for a TRO and preliminary injunction to prevent Sysco from breaching the CPA and mooting the dispute. On December 14, 2022, the Tribunal entered the TRO over Sysco's objection and invited Sysco to appear at a hearing eight days later to demonstrate "why the TRO should be lifted." On the evening before the scheduled hearing, and despite demanding for days that the Tribunal lift the

TRO, Sysco withdrew its opposition to the TRO and canceled the hearing, leaving the TRO in place.

For months, Sysco declined to challenge the TRO. During that time, the Tribunal set a briefing and hearing schedule for Respondents' application for a preliminary injunction. After hundreds of pages of briefing, witness statements, and expert reports, the Tribunal held two days of evidentiary hearings in early February 2023 which included live testimony from all four fact witnesses, five of the seven experts, and arguments from counsel. At the hearing, the Tribunal indicated it would rule promptly.

### III. Sysco Fires its Counsel in the Antitrust Cases

On February 24, 2023, Sysco informed Respondents that it had terminated its long-time counsel, Scott Gant, of Boies Schiller Flexner LLP.[4] Burford in 2019 had reached out to Mr. Gant, who represented Sysco at the time, to discuss financing Sysco's antitrust claims. Burford was (and remains) impressed with Mr. Gant's work, and so later decided to hire him to litigate additional food antitrust claims that Burford owned as an assignee from bankruptcy (rather than merely financed). Burford had no pre-existing relationship with Mr. Gant, nor does it have any relationship with Mr. Gant other than his representation in the food antitrust cases.

Sysco did not explain the basis for its decision nor was it required to by the CPA – Sysco retains unfettered discretion to discharge its counsel. Subsequent filings revealed, however, that Sysco purportedly terminated Boies Schiller for "cause," alleging that Mr. Gant supposedly violated his ethical and fiduciary duties in a September 2 call with a Burford representative. *See*, *e.g.*, Am. Pet. to Vacate Arbitration Award ¶¶ 31-40, *Sysco Corp. v. Glaz LLC*, No. 1:23-cv-

---

[4] *See* Exhibit 1 (Feb. 24, 2023 Ltr. from J. Rosenthal to D. Ho & L. Snodgrass); *see also* Boies Schiller Flexner LLP's Motion to Withdraw as Counsel for Sysco Corp., *In re Pork Antitrust Litig.*, No. 0:18-cv-01776 (D. Minn. Mar. 24, 2023), ECF No. 1882.

01451 (N.D. Ill. Mar. 20, 2023), ECF No. 18; Sysco Corp.'s Mem. re Boies Schiller Flexner LLP's Mot. to Withdraw at 3-4, *In re Pork Antitrust Litig.*, No. 0:18-cv-01776 (D. Minn. Mar. 24, 2023), ECF No. 1884.  Contrary to its assertions, Sysco authorized Respondents to communicate with Mr. Gant; both in the form of written instructions directing Boies Schiller to keep Respondents "fully and promptly apprised of each material development in relation to" the claims,[5] and in an additional express written authorization inviting Respondents to speak with Boies Schiller specifically for an evaluation of the proposed settlements at issue.[6]  Respondents cannot understand why Sysco has chosen to publicly attack Boies Schiller for complying with Sysco's own instructions – other than to fabricate a claim against Respondents under the financing agreement by falsely suggesting that Respondents somehow interfered with Boies Schiller's "independent professional judgment."  But Respondents had Sysco's express written authorization to speak with Boies Schiller and merely *asked* Boies Schiller for its independent professional judgment; they did not interfere with that judgment.

In its February 24 letter to Respondents explaining that it had terminated Boies Schiller, Sysco also proposed replacement counsel but noted that this counsel was unwilling to represent Sysco due its contractual obligations to Respondents.[7]  Respondents nonetheless consented to Sysco's proposed replacement counsel, subject only to ensuring that new counsel would abide by the provisions of Sysco and Respondents' agreement and would not cost more – unless Sysco

---

[5] *See* CPA § 5.3(b)(iv).  Sysco also executed Irrevocable Instructions to Boies Schiller on April 1, 2022, directing Boies Schiller to keep Respondents informed about the case in accordance with the CPA.

[6] The document containing this authorization was marked as confidential in the underlying arbitration, so Respondents have not attached it hereto, though Respondents are willing to file it under seal should the Court so desire.

[7] *See* Exhibit 1.

7

was willing to cover any additional expense.[8] Sysco has also purportedly engaged in discussions with a number of firms but it has yet to propose any other replacement counsel to Respondents. *See* Pl. Sysco Corp.'s Suppl. to its Mot. for Limited Stay at 2, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. Mar. 23, 2023), ECF No. 6439.

**IV.     Sysco Files Suit Before and After the Tribunal Issues a Preliminary Injunction**

On March 2, 2023, Sysco wrote to the Tribunal to inquire when it anticipated issuing its ruling on the preliminary injunction. The following day, March 3, the Tribunal informed the parties that it anticipated issuing its ruling by March 17, 2023, at the latest. On March 8, just days before the Tribunal indicated it would rule on the preliminary injunction, Sysco initiated this litigation by filing its petition to vacate the TRO. *See* Pet. to Vacate Arbitration Award, *Sysco Corp. v. Glaz LLC*, No. 1:23-cv-01451 (N.D. Ill. Mar. 8, 2023), ECF No. 1. Two days later, consistent with its March 3 guidance to the parties, the Tribunal vacated the TRO and, in a 78-page opinion, entered a preliminary injunction against Sysco. The TRO that Sysco's original petition seeks to vacate is now itself vacated, and that original petition is therefore moot.

In an effort to cure this jurisdictional defect, Sysco filed what it styled an "amended" petition on March 20. *See* Am. Pet. to Vacate Arbitration Award, *Sysco Corp. v. Glaz LLC*, No. 1:23-cv-01451 (N.D. Ill. Mar. 20, 2023), ECF No. 18. Sysco's second petition effectively attempts to withdraw its prior challenge to the vacated TRO and instead seeks vacatur of the preliminary injunction. Sysco concedes that supposed violations of its "due process rights . . . provide[] extremely limited (if any) grounds for a court to vacate an arbitration award," and so raises, primarily, a "public policy" defense. *Id.* ¶ 64. Sysco did not seek leave of Court or confer with counsel for Respondents before filing its second petition.

---

[8] *See* Exhibit 2 (Feb. 27, 2023 Ltr. from D. Ho to J. Rosenthal & L. Bensman).

On March 10, 2023, Respondents moved to confirm the preliminary injunction award in New York Supreme Court, because the seat of the arbitration is New York. *See* Pet. to Confirm Arbitration Award, *Glaz LLC v. Sysco Corp.*, No. 651289/2023 (N.Y. Sup. Ct. Mar. 10, 2023), NYSCEF Doc. 1. Sysco then removed the New York action to the Southern District of New York on March 24 and filed a pre-motion letter seeking leave to file a motion to transfer to the Northern District of Illinois. *See* Letter Motion, *Glaz LLC v. Sysco Corp.*, No. 1:23-cv-02489 (S.D.N.Y. Mar. 24, 2023), ECF No. 5. Respondents' letter response is due March 29.

## ARGUMENT

In light of Sysco's failure to file a valid pleading in the higher-numbered action and the imminent motions in the Southern District of New York, Respondents respectfully request that the Court stay consideration of Sysco's motion. After resolution of these issues, the parties would propose a schedule for further filings. A stay is appropriate for two reasons:

*First*, under Local Rule 40.4(c), motions to reassign are generally improper unless "the answer or motions in lieu of answer have been filed in each of the proceedings involved." At present, however, there is no deadline for Respondents to respond to Sysco's "Amended Petition" to vacate the preliminary injunction, ECF No. 18, because that petition is procedurally infirm. Sysco's "amended" petition is a supplemental pleading under Federal Rule of Civil Procedure 15(d), because it arises from an "event that happened after the date of the pleading to be supplemented" – namely, the preliminary injunction that post-dates the TRO challenged in Sysco's original petition. But Sysco did not seek leave to file its supplemental petition, as required, so there is neither a motion for Respondents to respond to nor a deadline for a responsive pleading. *See* Respondent's Motion to Dismiss Amended Petition without Prejudice and Stay Action, *Sysco Corp. v. Glaz LLC et al.*, 1:23-cv-01451 (N.D. Ill. Mar. 27, 2023), ECF No. 26; *see also* Fed R. Civ. P. 15(d) ("the court may, on just terms, permit a party to serve a

9

supplemental pleading," and "[t]he court may order that the opposing party plead to the supplemental pleading"); 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1504 (3d ed. April 2022 update) ("all supplemental pleadings require leave of court under Rule 15(d)").  Respondents have moved to dismiss Sysco's supplemental petition without prejudice, so Sysco can refile and the Court can enter a pleading schedule.  Once Respondents have filed a responsive pleading in that action, the parties will be better positioned to present their dispute about reassignment to this Court.

*Second*, Sysco has sought leave from the Southern District of New York to file a motion to transfer the parties' pending litigation there to the Northern District of Illinois.  Respondents' opposition to Sysco's pre-motion letter is due on March 29.  *See* Individual Practice of the Hon. Paul G. Gardephe, § IV.A.  How that Court ultimately rules on the transfer issue obviously bears on Sysco's reassignment motion.  If the Southern District of New York declines to transfer Respondents' case, the parties' dispute is not likely to be heard in the Northern District of Illinois.  And, if the Southern District of New York grants Sysco's transfer motion, Respondents will move to consolidate their confirmation petition with Sysco's case, and this Court should wait until that time to determine whether a consolidated case is sufficiently related.  Respondents' petition to confirm makes clear that this dispute is a run-of-the-mill FAA case that has little to do with the food antitrust cases.  Moreover, it is not yet clear if these cases are properly in federal court.  In the interest of judicial economy, this Court should wait for the resolution of these issues before making any decision on reassignment.

## CONCLUSION

For the foregoing reasons, the Court should stay consideration of Sysco's "Motion for Reassignment and Consolidation" with a schedule for further filings to be proposed by the parties.

Dated: March 27, 2023                  Respectfully submitted,

By: */s/ Richard Prendergast*
Richard Prendergast
Michael Layden
CROKE FAIRCHILD DUARTE & BERES
191 N. Wacker Dr., 31st Floor
Chicago, IL 60606
(312) 641-0881 (Telephone)
rprendergast@crokefairchild.com
mlayden@crokefairchild.com

Derek T. Ho (*pro hac vice forthcoming*)
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, D.C. 20036
(202) 326-7900 (Telephone)
dho@kellogghansen.com

Elizabeth Snodgrass (*pro hac vice forthcoming*)
THREE CROWNS LLP
Washington Harbour
3000 K Street, N.W., Suite 101
Washington, D.C. 20007
(202) 540-9492 (Telephone)
liz.snodgrass@threecrownsllp.com

*Attorneys for Respondents Glaz LLC, Posen Investments LP, and Kenosha Investments LP*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 27, 2023, I caused a true and correct copy of the foregoing document to be filed electronically. Notice of the filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: March 27, 2023                                       By: _/s/ Richard Prendergast_
                                                                              _Attorney for Respondents_